UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL               'O'

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Suzanne McKennon | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Alexander Su
Sarah Spielberger
Mariam Kaloustian

Attorneys Present for Defendants:

Geoffrey Long
Ronald Richards
Daniel Sachs
Stephen Cook

**Proceedings:**     **ZOOM HEARING RE:** PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT (Dkt. 304, filed on
November 4, 2024)

NOVAL CLAIMANTS' MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT (Dkt. 307, filed on November 4,
2024)

## I.    INTRODUCTION

On July 16, 2020, plaintiff United States of America ("plaintiff" or the
"government") filed this civil forfeiture action naming, as the defendant asset, all right
and title to real property located in Los Angeles, California, known as the Wilshire 402
Property. Dkt. 1 at 2. Around this time, the government filed separate forfeiture actions
against other defendant assets, including real properties located in Los Angeles,
California, known as the Wilshire Penthouse Property, the Alta Property, the Marilyn
Property, and the Summit Property, as well as a British Aerospace jet, an Azimut yacht,
an investment portfolio, a Lamborghini sports car, and sports memorabilia of boxer
Manny Pacquiao. Dkt. 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

On March 21, 2022, the Court issued an order consolidating seven forfeiture actions pursuant to Federal Rule of Civil Procedure 42.[1] Id. On May 9, 2022, the government filed its Consolidated Master Complaint. Dkt. 55 ("CMC"). The government alleges two claims for relief: (1) that defendant assets are forfeitable under a money laundering theory, because they are traceable to property involved in violations of 18 U.S.C. § 1956(a)(1)(B)(i) (Concealment Money Laundering); and (2) that the defendant assets are forfeitable under a proceeds theory, because they are derived from proceeds traceable to violations of 18 U.S.C. §§ 1014 (False Application to Financial Institution), 1343 (Wire Fraud), 1344 (Bank Fraud), and 2314 (International Transportation of Stolen or Fraudulently Obtained Property). Id. at 43-44.

On July 21, 2022, Khaled J. Al-Sabah ("Al-Sabah") acting individually and as a trustee of the Awal Trust, filed a claim to each of the defendant assets in this action. Dkt. 63. On July 22, 2022, Victor Franco Noval ("Franco") and several entities controlled by Franco and his father Victorino Noval ("Victorino") (collectively, the "Noval Claimants") also filed claims. See dkts. 64-67, 70. On March 27, 2023, the State of Kuwait ("Kuwait") filed a claim "asserting an ownership interest in [the] seized property." Dkt. 114 at 2. On April 3, 2023, the government filed a recognition of Kuwait's claims. Dkt. 117.

On September 6, 2023, the Court, pursuant to stipulation of the parties, dismissed three defendant assets from the action: the British Aerospace jet, the Azimut yacht, and the Lamborghini sports car. Dkt. 177.

---

[1] The consolidated cases include: (1) United States v. Real Property in Los Angeles, California, 2:20-cv-6316-CAS-KSx; (2) United States v. Real Property in Beverly Hills, California, 2:20-cv-6318-CAS-KSx; (3) United States v. Real Property in Beverly Hills, California, 2:20-cv-6319-CAS-KSx; (4) United States v. Real Property in Beverly Hills, California, 2:20-cv-6320-CAS-KSx; (5) United States v. One British Aerospace BAE125 Series 800A Aircraft Bearing Registration Number N716BB, et al, 2:20-cv-6321-CAS-KSx; (6) United States of America v. 762,201.48 Seized From U.S. Bank Account No. 8773 et al, 2:21-cv-01829-CASKSx; and (7) United States of America v. Real Property Located In Los Angeles, California, 2:21-cv-01832-CAS-KSx.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------|------|------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

On February 12, 2024, the Court granted Al-Sabah's withdrawal of his claim and withdrawal from the consolidated action. Dkt. 209.

On November 4, 2024, the government filed its present motion for summary judgment, or in the alternative, partial summary judgment, against the Noval Claimants, dkt. 304 ("Govt. Mot.") as well as its statement of uncontroverted facts, dkt. 304-1. On the same day, the Noval Claimants filed their present motion for summary judgment, or in the alternative, partial summary judgment, against the government, dkt. 307 ("Noval Mot."), as well as their statement of uncontroverted facts, dkt. 307-6. On November 16, 2024, Kuwait filed a joinder to the government's motion for summary judgment and opposition to the Noval Claimants' motion for summary judgment. Dkt. 318 ("Kuwait Joinder/Opp."). Kuwait also filed a statement of genuine dispute in support of the government's opposition to the Noval Claimants' motion, dkt. 318-2, and an amended statement of uncontroverted facts in support of the government's motion for summary judgment, dkt. 323.[2]

On November 18, 2024, the government filed its opposition to the Noval Claimants' motion for summary judgment, dkt. 327 ("Govt. Opp."), as well as its statement of genuine disputes. Dkt. 327-1. On the same day, the Noval Claimants filed their opposition to the government's motion for summary judgment, dkt. 329 ("Noval Opp."), as well as their statement of genuine disputes. Dkt. 334. Two of the Noval Claimants, 1141 Summit Drive, LLC and Franco individually, filed separate oppositions to the government's motion. Dkts. 331 ("Summit Opp."), 333 ("Franco Opp.").

On November 19, 2024, the Noval Claimants filed an objection to Kuwait's filings, characterized as an "untimely and improper motion for summary judgment and related documents." Dkt. 341. On November 25, 2024, Kuwait filed a response. Dkt. 342. On December 2, 2024, the Noval Claimants filed a reply. Dkt. 343.

Also on December 2, 2024, the government filed its reply to the Noval Claimants' oppositions, dkt. 347 ("Govt. Reply"), as well as a response to their statement of genuine disputes, dkt. 347-1 ("Govt. SUF"). On the same day, the Noval Claimants filed their

---

[2] Because of significant overlap between the government's SUF and Kuwait's SUF, the Court cites to the former. The Noval Claimants moved to strike, but did not respond to, Kuwait's SUF. Noval Reply at 19-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                '**O**'

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

reply to the government's opposition, dkt. 344 ("Noval Reply"), as well as a response to its statement of genuine disputes, dkt. 345 ("Noval SUF").

On December 16, 2024, the Court held a hearing. Presently before the Court are the government's and the Noval Claimants' cross-motions for summary judgment. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A.    The Mountain

This case involves allegations of the unlawful transfer of funds for real estate deals in the Central District of California. The Court begins with background on the primary real estate holding at issue: the Mountain of Beverly Hills, a 157-acre property located at 1652 Tower Grove, Beverly Hills, California ("the Mountain"). Noval SUF ¶ 46.

Ownership of the Mountain has been the subject of litigation for more than ten years. Id. ¶ 92. In 2010, Tower Park Properties LLC ("TPP") held record title to the Mountain. Govt. SUF ¶ 83. Victorino held an interest in the Mountain through his entity, LA Stars LLC ("LA Stars"), which held a 40% interest in TPP. Id. However, TPP and its lenders, the Mark Hughes Family Trust, were involved in multiple disputes, resulting in a reorganization plan approved by the Bankruptcy Court on April 1, 2010. Noval SUF ¶ 55. The reorganization plan required a balloon payment by TPP. Id. ¶ 55. The Noval Claimants assert that due to disagreements between Victorino and the then-trustee of the Mark Hughes Family Trust, TPP needed a new lender. Id.

In this same time period, according to the Noval Claimants, Victorino met a potential new lender: Al-Sabah. Victorino Decl. ¶¶ 3-4. Al-Sabah visited Victorino's residence in Beverly Hills in 2010, accompanied by Victorino's friend. Id. Al-Sabah was introduced as a member of the Kuwaiti Royal Family, who wanted to invest in real estate in the United States. Id. ¶ 5. Victorino told Al-Sabah that Victorino had an interest in the Mountain, but that it "needed a large cash infusion" of at least $100 million to be successful. Id. ¶ 6. The Noval Claimants assert that Al-Sabah committed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                               **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

funding the entire project.  Noval SUF ¶ 55.  The current dispute relates to the source of
funds transferred by Al-Sabah allegedly for investment in the Mountain.

    **B.**    **The Claimants**

    Franco is the son of Victorino, who was convicted in 2003 for mail fraud and tax
evasion arising out of a mortgage fraud scheme, and received a $25,358,494 criminal
restitution order, with interest.  Govt. SUF ¶¶ 5, 7-8.

    Franco is the manager for claimants 8484 Wilshire LLC ("8484 Wilshire"), Blue
Orchid Financial LLC ("Blue Orchid Financial"), Beverly Hills Exotic Collection,
Secured Capital Partners LLC ("SCP"), Beverly Hills Real Estate Holdings LLC
("BHREH"), and 1141 Summit Drive LLC ("Summit").  Govt. SUF ¶ 1.  Franco is both
grantor and trustee of the Rexford Trust.  Id. ¶¶ 3-4.  He is a claimant in this action as an
individual and as a trustee.  Noval SUF ¶ 6.  The parties dispute the identity of the
managing member of some of these entities.  Id. ¶¶ 7, 9, 11.

    Kuwait is a constitutional emirate located in the Middle East.  Govt. SUF ¶ 9.
Kuwait's Ministry of Defense operated under the direction of its minister of defense, Al-
Sabah, from 2013 to 2017.  Id. ¶¶ 10-11.  Jassar Abdul Razzaq Al-Jassar ("Al- Jassar")
served as undersecretary, or deputy minister of defense, from 2008 to 2017.  Id. ¶ 13.
The Kuwaiti Ministry of Defense maintains military liaison offices in foreign countries,
including the Military Attache's Office in London ("MAO London").  Id. ¶ 14.  MAO
London administers official Kuwaiti bank accounts, which are overseen by the Ministry
of Defense's Financial Affairs Department.  Id. ¶¶ 15-16.  Fahad Abdulrahman Al-Baz
("Al-Baz") was the head of MAO London from 2010 to 2018.  Id. ¶ 17.  As part of their
official duties, Al-Sabah, Al-Jassar, and Al-Baz worked together (collectively "the MOD
Group").  Id. ¶ 18.  During the relevant time periods, the Kuwaiti Ministry of Defense
maintained official bank accounts held in its name at the National Bank of Kuwait
("NBK"), while MAO London maintained accounts in its name at Ahli United Bank's
(AUB) London office.  Id. ¶¶ 19-20.  These AUB accounts were generally funded via
fixed deposits from the Ministry of Defense's accounts at the Central Bank and NBK.  Id.
¶¶ 24, 27.  MAO London's compliance program authorized MAO London accounts to be
used only for authorized State of Kuwait business and had specific compliance
procedures for Al-Sabah, Al-Jassar, and Al-Baz.  Id. ¶¶ 31-33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

### C.   Al-Sabah and Victorino's Memorandum of Agreement and Initial Transfers

On or about November 23, 2010, Victorino and Al-Sabah executed a Memorandum of Agreement for LA Stars, for the purpose of developing, marketing, and selling the Mountain. Govt. SUF ¶ 80. This agreement granted Al-Sabah 50% interest in LA Stars (and thus, an interest in the Mountain) in return for a series of payments totaling at least $20 million. Id. ¶ 81.

The parties agree that the first five wire transfers from Al-Sabah were made between December 22, 2010 and December 22, 2011, and are not part of the government's allegations in this action. Id. ¶ 58. The parties dispute Franco's state of mind at the time of receipt of the first five wire transfers. The Noval Claimants assert that Franco believed the transfers were funded from Al-Sabah's personal or family wealth. Id. ¶ 59. The government asserts that he knew the funds came from the Embassy of Kuwait. Id.

The parties next dispute Al-Sabah's ability to have satisfied his funding commitment to LA Stars in the Memorandum of Agreement. Govt. SUF ¶ 84. The government contends that, in 2011, Al-Sabah struggled to do so, based on multiple emails sent throughout 2011. Id. The Noval Claimants contend that he was not struggling financially, as Victorino states in his declaration that he "never thought for a second [Al-Sabah] did not have resources." Id. On December 22, 2011, Al-Sabah wired Victorino $8.5 million and sent a "copy of the transfer" reflecting the wire as coming from the "Embassy of the State of Kuwait." Id. ¶ 89.

### D.   Alleged Unlawful Activity and Transfers to Unregistered Accounts

The parties agree that the MOD Group were involved in the transfer of funds at MAO London, but dispute whether these transfers were unlawful.

The government contends that the MOD Group planned to open new, unregistered accounts for funds transfers that would not be subject to the same level of oversight and registration as regular accounts, such as reporting to MAO London or the Ministry of Defense. Id. ¶ 56. The Noval Claimants contend that Al-Sabah testified that he did not violate Kuwaiti laws by transferring the funds at issue, as he had authority from the Kuwaiti Amir, and therefore discretion to invest the funds. Id. Further, the Noval

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                              'O'

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

Claimants contend that the funds transferred into the allegedly unregistered accounts at AUB came from known and registered accounts at AUB and NBK; thus, Kuwait knew about the transfers from its own accounts.[3] Id.

The parties agree that under instructions from the MOD Group, AUB opened multiple accounts in the MAO's name, through Al-Baz opening them in-person at the bank. Id. ¶¶ 57-58. These accounts included accounts with account numbers ending in x3470 ("MAO-MOD x3470 Account"), x5277 ("MAO-MOD x5277 Account"), and x6496 ("MAO- MOD x6496 Account"). Id. ¶ 59.

The parties agree that the MAO-Ministry of Defense x3470, x5277, and x6496 accounts were held in the name of "Embassy of the State of Kuwait – London – Military Attache's Office." Govt. SUF ¶ 61. The parties dispute the ownership of the monies that funded these accounts. Id. ¶ 62. The government contends that the monies were "entirely the State of Kuwait's funds." Id. The Noval Claimants contend that, according to a Kuwait's 30(b)(6) witness, the source of the funds has not been determined. Id. The government also asserts that the MOD Group imposed special handling rules on AUB employees in regards to the unregistered MAO accounts. Id. ¶ 65.

The government contends that from December 19, 2011 to February 25, 2015, per instructions from Al-Jassar or Al-Baz, millions of dollars were transferred from registered NBK and AUB accounts to the unregistered, unapproved, and segregated accounts that were part of their unlawful scheme.[4] Id. ¶¶ 67-77.

---

[3] The Noval Claimants identify these same disputes in response to all government facts that reference the allegedly unregistered, unapproved, and segregated accounts created by the MOD Group. Govt. SUF ¶ 56. The Noval Claimants also assert these same disputes in response to all government facts that reference the registered accounts from which the funds were transferred. Id. The Court notes these disputes but does not repeat them throughout the order.

[4] The Noval Claimants object to this evidence and all government contentions that rely on the tracing of funds between accounts because they assert that the government's expert witness on tracing was untimely disclosed. Govt. SUF ¶ 68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title    | USA v. Real Property Located in Los Angeles, California | | |

### E.    The Creation of SCP, the Awal Trust, and BHREH

In 2009 or 2010, Franco formed SCP, a real estate business. Id. ¶ 93.

In or about 2012, Al-Sabah established the Awal Trust, with himself as trustee. Id. ¶ 91. In or about February 2012, Al-Sabah designated Franco as his authorized agent with respect to the Awal Trust. Id. ¶ 92.

In or about 2012, BHREH was created, with Franco designated as manager. Id. ¶¶ 96-97. On or about January 1, 2013, Franco signed BHREH's Operating Agreement as an authorized agent of Al-Sabah, for the Awal Trust. Id. ¶ 98. On or about January 1, 2015, Franco executed a certification on behalf of BHREH, certifying that Awal Trust held a 50% interest in BHREH ("Awal Promissory Note"). Id. ¶ 99. The parties dispute whether the reason Victorino did not sign for the Noval Claimants was because of his prior criminal conviction, or because Victorino was not a member of BHREH. Id. ¶ 100.

The parties dispute the contents of the Awal Promissory Note. The Noval Claimants assert that, pursuant to the Awal Promissory Note, the Noval Claimants promised to repay the Awal Trust $69,962,881 on demand. Noval SUF ¶ 77. The Noval Claimants also assert that the Awal Promissory Note memorialized the equity participation loan from the Awal Trust to BHREH, granted the Awal Trust 50% equity in BHREH, and granted the Awal Trust the right to 50% of the profits on the sale of the Mountain after repayment of the $69,962,881 and the existing Hughes Trust senior loans in place on the Mountain. Id. The government contends that the terms are vague and contradict each other, and that the Awal Promissory Note was not signed by the Awal Trust. Id.

The parties dispute whether the Awal Promissory Note alone was consideration for the transferred funds, or if the Noval Claimants and Al-Sabah also agreed that he would receive 50% membership in LA Stars; 50% of the profits from the sale of the Mountain; and 50% membership in BHREH, which held an option for BHREH, or its assignee, to purchase the Mountain. Govt. SUF ¶ 210.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

### F.    Twelve Transfers from Allegedly Unregistered MAO Accounts to Accounts in California

The parties agree that from 2011 to 2015, the MOD Group caused the MAO-MOD x3470, x5277, and x6496 Accounts to make twelve transfers of funds to California. Id. ¶ 115. The parties dispute the Noval Claimants' alleged knowledge of the source of the funds for these twelve transfers. Noval SUF ¶¶ 61-62. The parties also dispute whether the Noval Claimants were aware that the purported purpose of the funds was to build a military academy. Id. ¶ 64. The parties agree that the MOD Group were eventually convicted in Kuwait in connection with their seizure of Kuwaiti funds in the MAO-MOD x3470, x5277, and x6496 Accounts, though they were first acquitted. Id. ¶ 126.

The government provides evidence of transfers from the MAO-MOD x3470, x5277, and x6496 Accounts to various bank accounts in California, including a Wells Fargo account held in the name of law firm Fullerton Lemann Schaefer & Dominick LLP. Govt. SUF ¶¶ 127-139. On at least half a dozen occasions, AUB bankers were told by the MOD Group that the transfers to California were related to a purported military academy. Id. ¶ 130. The parties agree that none of the above transfers were recorded in the books of MAO London of the Ministry of Defense Financial Affairs Department. Id. ¶¶ 141-142. AUB personnel were not told by Al-Jassar or Al-Baz that the purpose for the above transfers involved the Novals, the Mountain, or Beverly Hills real estate. Id. ¶ 143.

The government provides evidence that Kuwaiti funds from these unregistered accounts and transfers can be traced to the defendant assets owned by the Noval Claimants. Govt. SUF ¶¶ 148-183. The Noval Claimants dispute these facts to the extent that they are based on inadmissible evidence. Id.

### G.    Novals' Relationship with Financial Professionals

The government provides documentation related to Franco's attempts to seek financial services from various institutions throughout the years (including two accounting firms, Comerica Bank, First Choice Bank, Banc of California, and Morgan Stanley) in order to demonstrate that Franco knew, or had reason to know, that the funds from Al-Sabah were unlawfully obtained or at least suspicious. Id. ¶¶ 234-264. In one instance, Comerica Bank initiated a compliance investigation, resulting in termination of its relationship with the Noval Claimants due to a "questionable source and application of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

the funds surrounding the Kuwaiti government." Id. ¶ 238. Comerica Bank also noted that when questioned, "[Franco] responded on two different occasions with conflicting information, giving the appearance that he was attempting to legitimize the suspicious wire transaction." Id. ¶ 237. The Noval Claimants assert that Franco did not know or have reason to know, at any time, that the source of the funds was unlawful. Id.

The parties agree that in 2016, Franco submitted a Liquidity Access Line Financial Statement and application with Morgan Stanley. Id. ¶¶ 266-275. The Noval Claimants assert that Franco believed, when he was providing information for the Liquidity Access Line Financial Statement and filling out the application, that it was truthful in that it contained the net worth of the Rexford Trust based on its ownership of the membership interests in SCP, BHREH, 8484 Wilshire, Marilyn Property, and cash on hand. Noval SUF ¶ 26. The government disputes this fact, stating that Franco chose not to disclose BHREH's loan obligation notwithstanding the fact that he listed BHREH's assets in the application. Id. The parties dispute whether Franco represented to Morgan Stanley that the $30 million they intended to invest was inherited by Franco from his grandfather and deposited into the Rexford Trust. Govt. SUF ¶ 276. The parties agree that in 2018, while applying for a cash-out refinance from lender Koronus Holdings, Franco again omitted disclosing the Awal Trust ownership in BHREH. Id. ¶ 290.

### H. Foreclosure on the Mountain

On August 20, 2019, the trustee of the Mark Hughes Family Trust foreclosed on the Mountain, and TPP lost its interest in the property. Id. ¶ 89. The parties dispute whether, since the foreclosure on the Mountain, Al-Sabah has been financing litigation against the trustees of the Mark Hughes Family Trust because of his ownership interest in LA Stars and BHREH. Id. ¶¶ 90-92.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|-------------------------------------------|------|-------------------|
| Title    | USA v. Real Property Located in Los Angeles, California | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   The Government's Motion for Summary Judgment

#### 1.   The Government's Two Claims of Forfeitability

##### a)   The Government's Motion

The government first argues the defendant assets are forfeitable on the basis that they are derived from proceeds of wire fraud and foreign transport of stolen money. Pursuant to 18 U.S.C. § 981(a)(1)(C), the government argues, "property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting certain specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7) is subject to forfeiture." Govt. Mot. at 10. Specified unlawful activities include, according to the government, wire fraud pursuant to 18 U.S.C. § 1343 and foreign transportation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

stolen money pursuant to 18 U.S.C. § 2314. Id. (citing 18 U.S.C. §§ 1956(c)(7), 1961(1) (incorporated at 1956(c)(7)(A)).

The government argues that the MOD Group committed wire fraud. Id. at 10. The government argues that the MOD Group "devised and participated in a scheme to defraud the State of Kuwait out of more than $112.8 million dollars." Id. at 11. The government contends that the MOD Group opened new accounts in MAO London's name and did not register them, using their positions to evade compliance measures and to implement special procedures limiting access to the accounts and account statements. Id. at 12. For example, the government argues that electronic transfer confirmations for the accounts were only sent to the MOD Group's personal email addresses and that "[i]f statements or transaction confirmations from the MAO-Ministry of Defense accounts were inadvertently sent out by AUB to MAO staff, those statements were ordered destroyed." Id. The government argues that the MOD Group told the AUB Bankers that these new procedures were needed for national security and intelligence reasons. Id. They also told the AUB Bankers that the twelve transfers made were related to a military academy. Id. The government contends that these funds were actually for Al-Sabah's personal business transactions with Victorino and Franco, a truth concealed from the AUB Bankers. Id. The government argues that based on these facts, the MOD Group committed wire fraud. Id. at 13.

The government also contends that the MOD Group caused the foreign transport of stolen money, which requires the government to "prove that the money transported was stolen, converted, taken by fraud, or derived from such property." Id. (citing United States v. Lazarenko, 564 F.3d 1026, 1035 (9th Cir. 2009)) (emphasis omitted). The transport of funds, the government argues, was caused by the MOD Group executing its "scheme to deprive the State of Kuwait of public funds, sent for non-public purposes, namely [Al-Sabah]'s own personal real estate investments," and was accomplished by circumventing the risk compliance measures in place through false claims about the use of the funds. Id. As a result, the government contends, the MOD Group violated 18 U.S.C. § 2314.

The government argues that both specified unlawful activities resulted in proceeds traced to the defendant assets. Id. at 14. The government contends that "proceeds" pursuant to 18 U.S.C. § 981(a)(2)(A) "are defined as 'property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.'" Id. (citing 18 U.S.C. § 981(a)(2)(A); United States v. Real Property Located at 22 Santa Barbara Dr., 264 F.3d 860, 872-873 (9th Cir. 2001)) (emphasis omitted). Proceeds derived from proceeds, according to the government, are also forfeitable. Id. (citing United States v. 3814 Thurman Street, 164 F.3d 1191, 1196 (9th Cir. 1999)).

The government argues that the Noval Claimants used specified unlawful activity proceeds to acquire the defendant assets. Id. The government argues that "the defendant bank funds represent proceeds of proceeds because they were acquired from cash-out refinances of real property purchased with stolen State of Kuwait funds." Id. at 14-15.

The government next argues that defendant assets are subject to forfeiture because they are involved in money laundering or are traceable to property involved in money laundering, pursuant to 18 U.S.C. § 981(a)(1)(A). Id. at 15. The government contends that 18 U.S.C. § 1956(a)(1)(B)(i) criminalizes financial transactions that use the proceeds of an unlawful activity knowing that the purpose is to conceal proceeds of unlawful activity. Id. (citing United States v. Jenkins, 633 F.3d 788, 804 (9th Cir. 2011)). Additionally, the government argues that "'untainted' property comingled with property involved in money laundering is also forfeitable." Id. (citing United States v. Eng., 92 F.3d 909, 916 (9th Cir. 1996); United States v. All Funds on Deposit at Dime Savings Bank, 255 F. Supp. 2d 56 (E.D.N.Y. 2003)).

The government contends that the proceeds of the wire fraud were involved in money laundering and are traceable thereto. Id. at 16. The government argues that the MOD Group made false representations about the use of the transferred funds, when they were actually to be used for Al-Sabah's personal real estate development plans, a plan which he attempted to accomplish, and did accomplish in part, with the help of the Noval Claimants. Id. Accordingly, the government argues, the proceeds of wire fraud were subsequently involved in laundering transactions undertaken by the Noval Claimants. Id. The government argues that even if the Noval Claimants were not involved in the wire fraud, they knew the funds were proceeds of some kind of unlawful activity and subsequently engaged in transactions to acquire the defendant assets, concealing the source of the stolen funds and subjecting the assets to forfeiture. Id. at 16-17 (citing United States v. Golb, 69 F. 3d 1417, 1417, 1428 (9th Cir. 1995)). Due to the intermediate stops the assets made and the multiple bank accounts in different names

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

used, the government argues, the "Defendant Assets are 'traceable to such property' involved in laundering." Id. at 17 (citing 18 U.S.C. § 981(a)(1)(A)).

Next, the government argues that "[t]he funds used to acquire the Defendant Assets were involved in the laundering of proceeds, or traceable to the laundering of proceeds of misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official ('foreign public corruption')." Id. The government argues that committing an offense against a foreign nation means that the underlying crime violates foreign law, a question it argues the Court can determine. Id. The government argues that the requirements for misappropriation and embezzlement pursuant to American law and Kuwaiti law are aligned. Id. at 18-20. The misappropriation or embezzlement in this case occurred, according to the government, when the MOD Group pooled funds into the MAO-Ministry of Defense accounts that were from other accounts and belonged to Kuwait. Id. at 20. Accordingly, the government argues the MOD Group "misappropriated, stole, and embezzled Kuwaiti funds." Id.

The government argues that the transactions involving the proceeds were undertaken at least in part to conceal the source of the funds because the MOD Group caused at least twelve transfers from London to California, intentionally taking the funds and putting them in unauthorized accounts, causing the funds to be transferred out of Kuwaiti and AUB control, and to the Noval Claimants in order to conceal their source. Id. at 21. The government argues that the "inescapable conclusion" based on the facts is that the transfers to the Noval Claimants were meant to conceal the nature and source of the funds, in violation of § 1956 and that because the Noval Claimants used the laundered public corruption proceeds to buy the defendant assets while disguising their source, the defendant assets were further involved in money laundering. Id. at 22.

b)   Kuwait's Joinder/Opposition on Forfeitability

Kuwait joins and adopts the government's motion. Kuwait Joinder/Opp. at 8. The novel argument presented by Kuwait is that the international comity doctrine presents a distinct reason for the Court to conclude that the defendant assets are subject to forfeiture. Id. at 11. Pursuant to this doctrine, Kuwait argues, the Court can give full effect to a foreign judgment. Id. Kuwait argues that the defendant assets are subject to forfeiture because they were involved in money laundering in violation of 18 U.S.C. § 1956, which includes misappropriation and Kuwait's highest court convicted the MOD Group of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                 **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

misappropriation of public funds pursuant to Kuwaiti law. Id. at 12. Accordingly, Kuwait argues, "[t]here is no dispute that the Defendant Assets are subject to forfeiture under section 1956(c)(7)(B)(iv) because Kuwait's highest court has already found Al-Sabah guilty of these offenses under Kuwaiti law. Id.

> c)   The Noval Claimants' Opposition to Forfeitability

In opposition to the government's arguments on both of its forfeitability claims, the Noval Claimants argue that the government's expert opinions and evidence are inadmissible. Noval Opp. at 7. First, the Noval Claimants argue that the government's expert disclosures were untimely, thus violating this Court's order and Federal Rule of Civil Procedure 37(c)(1). Id. Second, the Noval Claimants argue that expert Peter Platt's ("Platt") opinions are inadmissible pursuant to Federal Rule of Evidence 702. Id. The Noval Claimants contend that the Court does not need Platt to tell it whether the transaction was an arm's length transaction because this determination does not require expert opinion. Id. They argue that Platt is also wrong on the facts, uses incorrect principles and methods, and applies flawed principles and methods to the inaccurate facts, resulting in an inaccurate opinion. Id. at 10.

Next, the Noval Claimants argue that without expert opinion and testimony on tracing, the government cannot make out its claim because it bears the burden of showing forfeitability and demonstrating that the defendant assets can be traced to property involved in transactions or derived from proceeds that are traceable to violations of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(c)(7)(A), or 1961(1). Id. at 11. They also argue that the government's foreign law determination is dependent on expert opinion. Id. at 12. Both forms of expert opinion necessary to prove this case, they argue, are excluded pursuant to Federal Rule of Civil Procedure 37(c)(1), and accordingly the government cannot meet its burden to prove forfeitability. Id.

The Noval Claimants argue that there is no evidence that they participated in concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Id. at 17. They also contend that they did not know that the funds were the proceeds of unlawful activity, and money laundering requires actual knowledge, of which they argue there is no evidence because they believed the funds were derived from Al-Sabah's personal wealth as a Kuwaiti royal. Id. at 18-19. The Noval Claimants also argue that it is unclear, but that it seems the government contends that Franco's failure to disclose the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|---------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

source of the funds to Morgan Stanley supports its money laundering claim.  Id. 19.
They argue that Franco did not misrepresent the source of the funds.  Id.  The only other
alleged circumstantial evidence provided by the government, they argue, are the emails
between Victorino and Al-Sabah, which "were sent at or around the time that [Al-Sabah]
commenced state court litigation against the Noval claimants," and therefore, the
government "takes those emails out of context."  Id.  Additionally, the Noval Claimants
argue, there are triable issues of material fact as to whether there was specified unlawful
activity or money laundering by Al-Sabah, who they claim had permission to use the
funds, which the Kuwaiti government must have at least been aware were leaving the
accounts.  Id. at 20-21.

        d)   Claimant 1141 Summit Drive's Opposition to the Government's Motion

      Claimant 1141 Summit Drive ("Summit") argues that pursuant to "the language of
the statute, only those proceeds traceable to illegal money are subject to forfeiture," and
that here, there is no dispute that the downpayment made on the Summit Property is not
traceable to illegal wire fraud, thus the loan proceeds used to purchase the property
cannot be forfeited.  Summit Opp. at 12-13 (citing 21 U.S.C. § 881 (a)(6)).  Summit
argues that the government has to show that but for the alleged offense, the asset would
not have been purchased, and that here, "the loan was procured due to Franco[]'s credit
risk and personal guaranty," rather than any alleged offense in Kuwait or London.  Id. at
15.  Summit contends that the only evidence offered is that the Novals moved money
from their own accounts, which is not money laundering, and that the issue of intent is a
fact issue that cannot be decided on summary judgment.  Id. at 16-17.  Summit argues
that it would be inequitable to allow the government to forfeit the entire assets when the
allegation of tainted funds goes to only a portion of the purchase price, thus if the Court
chooses to forfeit a portion of the asset, Summit "requests it be limited to the tainted
amount of $8,861,683,19."  Id. at 22-23.

      Summit next argues that it had no knowledge that Al-Sabah was moving money
into an unregistered account, and that the government concedes in its moving papers that
the Noval Claimants did not know that the funds were sent to them from unauthorized
accounts.  Id. at 24. Finally, Summit argues that there are triable issues of fact as to
knowledge and value, and that the government presents no evidence that Franco had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

reason to believe that taking out a credit line and loan to purchase the Summit Property would subject it to forfeiture seven years later. Id. at 25.

> e)    Claimant Franco's Opposition to the Government's Motion

Franco's individual opposition is filed to address what he describes as "some of the unique factual and legal issues involving the real property defendant 1124 Marilyn Dr., Beverly Hills, California, APN 4348-003-014 ('Marilyn Property') …." Franco Opp. at 6. Similar to Summit's motion, Franco contends that the government's motion "ignores two critical facts [as to the Marilyn Property]: 1) the money used to purchase the asset was from Franco[]'s personal creditworthiness and 2) came from [an SCP] bank account that had over $5,200,000 in it as of the beginning of 2012" which was "before any alleged tainted wires hit the SCP account." Id. at 8. Franco argues that there is no evidence provided by the government to demonstrate that the lending decision was based on anything other than Franco's own credit, and that "[i]n fact, the evidence is the opposite and disputed." Id. at 9. Franco argues that the government is wrong to claim that he tried to hide the source of the funds, citing an email he sent to the President of the Banc of California in 2015 explaining that the funds were from Al-Sabah. Id. at 12. As to the funds used for the Marilyn Property, Franco argues, the declaration from the government's expert, Remoun Karlous ("Karlous"), does not provide a basis on which to find that the funds used to purchase the property were not the funds Franco had prior to January 13, 2012. Id. at 14. Further, Franco's declaration says the opposite. Id. at 14.

> f)    The Government's Reply

In reply, the government argues that the Noval Claimants fail to create a material dispute. Govt. Reply at 1-2. The government argues that they also rely on sham affidavits, which is insufficient to avoid summary judgment. Id. at 2 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

As to forfeitability, the government first argues that it is irrelevant that the Noval Claimants are not charged as criminal defendants because in civil forfeiture, it is irrelevant whether the property owner is culpable. Id. at 4. Rather, the government argues, pursuant to 18 U.S.C. § 981(a)(1)(A), property involved in a transaction or attempted transaction that violates money laundering laws or is traceable to such property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

is forfeitable, and pursuant to 18 U.S.C. § 981(a)(1)(C), property that is proceeds of or derived from a violation is forfeitable. Id.

The government reiterates its arguments that the defendant assets are forfeitable because they are proceeds of wire fraud pursuant to 18 U.S.C. § 1343 or of foreign transport of stolen money pursuant to 18 U.S.C. § 2314, and that the Noval Claimants "essentially concede" this. Id. Though "the Noval Claimants deny knowledge of the scheme one way or another," the government argues "they do not dispute the manner and means in which the scheme was carried out." Id. at 5. The government states that the Noval Claimants argue that the December 22, 2011 wire of $8.5 million was not the proceeds of a crime, but that this is incorrect because the MOD Group stole those funds from Kuwait and transferred it to California as part of the same scheme. Id. at 5-6. The government argues that the Court already found that "the Noval Claimants conceded that 'Kuwait is the undisputed owner of the accounts from which the funds at issue were sent,'" and that the Noval Claimants are now estopped from arguing otherwise. Id. (citing dkt. 251, n.4).

The government also contends that its experts were timely disclosed, pursuant to the ambiguous schedule to which the parties stipulated, and that any harm that resulted from delay was caused by the Noval Claimants' own choice not to raise the timeliness issue until this briefing. Id. at 6-7. The government argues that the documents on which Karlous relied were already produced in discovery. Id. at 8.

Next, the government argues that the $57 million that Al-Sabah transferred on April 9, 2015, can be traced to the defendant assets and that the Summit and Franco Oppositions do not properly challenge the government's tracing. Id. at 9. As to the Summit Property, the government contends that the downpayment was paid using a priority credit line collateralized with Kuwaiti funds and a direct payment from Kuwaiti funds, and that the credit line was ultimately paid off with stolen Kuwaiti funds. Id. at 10. The government states that Summit concedes that forfeiture should be limited to the tainted $8,861683.19, but that this is legally incorrect. Id. As to the Marilyn Property, the government contends most of the purchase is tainted. Id.

The government next contends that it prevails on the money laundering theory of forfeiture because the Court should find that wire fraud occurred. Id. at 12. The government contends that the Noval Claimants do not refute this, rather they seek to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|------------------------------------------|------|-------------------|
| Title    | USA v. Real Property Located in Los Angeles, California | | |

exclude the government's foreign law expert, without whom the government argues it can still make out its 18 U.S.C. § 1956(c)(7)(B)(iv) claim. Id. at 12-13. The government also argues that the defendant assets are traceable to the laundering of foreign public corruption proceeds because the Noval Claimants cannot persuasively argue that the MOD Group did not steal Kuwaiti money and defendant assets are traceable to these laundered proceeds. Id. at 13. Finally, the government argues that the Noval Claimants are incorrect to argue that the MOD Group could not have violated this statute because they are members of the Kuwaiti government, when the statute is explicitly directed at government officials abusing their positions. Id.

      2.    The Innocent Owner Defense

          a)    The Government's Motion

The government argues that to prove innocent ownership, the Noval Claimants must show that "(1) they were 'bona fide purchasers for value' ('BFP') of the Kuwaiti funds used to purchase the Defendant Assets and that (2) they did not know **and** were without reasonable cause to believe that the property (the stolen Kuwaiti funds) was subject to forfeiture." Govt. Mot. at 22-23.

The government argues first that the Noval Claimants cannot establish that they are BFPs of the transferred funds because being a BFP requires an arm's length transaction from which the BFP expects to receive something of equivalent value in return. Id. at 23-24. The government argues that the Noval Claimants "may claim that they are BFPs of the funds transferred to them by Al-Sabah because of a single-paged Awal Promissory Note wherein the Awal Trust purportedly loaned BHREH $69,962,881," but that the government's expert, Platt, explained that this loan was not consistent with an arm's length transaction. Id. at 24. The government next argues that the Noval Claimants cannot prove that they had no reason to know the funds were not proceeds of crime, as they were "at best [] willfully blind." Id. at 25.

          b)    The Noval Claimants' Opposition

The Noval Claimants argue that the government has failed to meet its initial burden of showing that there is no triable issue of material fact as to their innocent owner defense. Noval Opp. at 13. They argue that they are BFPs, even if there has been only part performance of the financial transaction. Id. at 13-14 (citing United States v. 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

<u>Milton Rahn Rd. Rincon, Georgia 31326</u>, No. 4:18-CV-299, 2022 WL 969621, at *2 (S.D. Ga. Mar. 30, 2022)). Next, they argue that the term BFP "must be liberally construed" to include those who give value to someone in an arm's length transaction with the expectation of receiving that same value in return. <u>Id.</u> at 14. They argue that "in exchange for the $104,380,000 Plaintiff alleges was unlawfully obtained by [Al-Sabah] and wired to the Noval Claimants, [Al-Sabah] received approximately $145,000,000 to $215,000,000 of value in equity in the Mountain on the owner side and profit participation and equity on the lender side." <u>Id.</u> at 15.

The Noval Claimants argue, as to the second prong of the innocent owner defense, that they did not know and did not have reason to know that the funds were subject to forfeiture. <u>Id.</u> at 16. They contend that Al-Sabah filed declarations and supporting evidence in this case as recently as March, 2023 claiming that he had a right to the funds. <u>Id.</u> at 16-17. The Noval Claimants argue that they received five wires from Al-Sabah that the government concedes were not unlawful and that nothing changed about the subsequent eleven wires such that the Noval Claimants would have additional information about the source of the funds, thus they continued to believe the funds came from Al-Sabah's "own personal, family wealth." <u>Id.</u> at 17.

The Noval Claimants also argue that though the government appears to move for forfeiture on the proceeds from the sale of the Bedford Property, these proceeds are no longer at issue. <u>Id.</u> at 22.

c)    <u>The Government's Reply</u>

The government argues that the Noval Claimants cannot make out the innocent owner defense, first, because they are not BFPs. Govt. Reply at 14. The government contends that the Court should consider Platt's opinion because it was timely or was at least disclosed without prejudice and because courts have relied on experts in assessing whether a transaction is properly understood as an arm's length transaction. <u>Id.</u> The government next argues the transactions here are not properly considered arm's length transactions because the sole fact that from December 2011 to October 2014 the Noval Claimants and Victorino received wires from Al-Sabah of at least $46,880,000 in proceeds with no contemporaneous agreement or promise of repayment demonstrates that the transactions were not arm's length transactions. <u>Id.</u> at 15. Additionally, the government argues, any purported oral agreement regarding these wires from Al-Sabah

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

was invalid under the statute of frauds because the contract was not in writing and
performance was not accomplished within one year of the agreement. Id. The
government argues that the Awal Promissory Note is insufficient and the Noval
Claimants' proposed consideration is inadequate. Id. at 16-17.

The government argues that as to the second prong of the innocent owner defense,
the Noval Claimants cannot establish that they were reasonably without cause to believe
that the Kuwaiti funds were proceeds of crime. Id. at 21. The government contends that
by April 2012, Franco knew the funds were coming from the Embassy of Kuwait rather
than Al-Sabah's personal funds, that in 2013 he was informed that receiving Al-Sabah's
money without valid loan agreements could raise concern, and that in May 2015,
Comerica Bank recommended terminating the accounts based partially on the
questionable source of funds. Id. The government next contends that Franco thereafter
changed his approach, concealing the source of the funds from Morgan Stanley and never
asking Al-Sabah any questions. Id. at 22-23. Victorino's communications with Al-Sabah
also demonstrate reason to know, the government argues, citing 2019 texts from
Victorino to Al-Sabah. Id. at 23.

       3.   Conclusion on the Government's Motion

          a)   Forfeitability Claims

First, as to the expert issue, the Court finds that the last date to designate an expert
was unclear under the Court's May 24, 2024 scheduling order, and the Court declines to
exclude the expert testimony on the ground that it was filed late. This is because the
Noval Claimants did not timely object to the allegedly late filed expert disclosure.
Similarly, given that there is no evidence that the government had reason to believe that
its expert disclosure was filed late, it would be unfair to require the government to move
to allow the late filing of the expert discovery. In the Court's view, the proper result
would be to permit the Noval Claimants to designate a rebuttal expert. At the hearing,
counsel for the Noval Claimants indicated that they would retain a rebuttal expert. The
Court orders the Noval Claimants to identify a rebuttal expert no later than January 31,
2025. At that time, the Noval Claimants should be prepared to discuss the timing of their
expert's opinion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

With regard to the government's first claim for forfeitability, according to the proceeds theory, 18 U.S.C. § 981(a)(1)(C), based on the underlying specified unlawful activities of wire fraud pursuant to 18 U.S.C. § 1343 and foreign transport of stolen money pursuant to 18 U.S.C. § 2314, the Court finds there are disputed issues of material fact. The Court concludes that even if it admits the government's expert testimony, questions of fact precluding summary judgment on the government's proceeds theory remain. In order to prove forfeitability pursuant to 18 U.S.C. §981(a)(1)(C) based on an underlying violation of 18 U.S.C. § 1343, the government must establish by a preponderance of the evidence that the specified unlawful activity was committed. United States v. Real Prop. Located in Malibu, California, No. 21-CV-2104569-JAK-KLSX, 2023 WL 5505895, at *5 (C.D. Cal. June 28, 2023) (citing 18 U.S.C. § 983(c); United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002)) (finding that pursuant to the Civil Forfeiture Reform Act of 2000, the government bears the burden of establishing by a preponderance of the evidence that the property at issue is subject to forfeiture). In order to make out a violation of 18 U.S.C. § 1343, the government must make out "(1) a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) a specific intent to deceive or defraud." United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001) (citing United States v. Blinder, 10 F.3d 1468, 1472 (9th Cir. 1993)). The Court finds that a genuine dispute exists as to the establishment of a scheme to defraud and a specific intent to deceive or defraud.

The government contends that the MOD Group established a scheme to defraud the State of Kuwait, proven by facts including the skirting of compliance measures by the MOD Group, justified to the AUB Bankers with fabricated national security and intelligence reasons, and by the MOD Group's claims that the transfers were for a purported military academy. Govt. SUF ¶¶ 125, 130. Relying on the MOD Group's misrepresentations, the government argues, the AUB Bankers caused the twelve fraudulent transfers. Govt. Mot. at 12 (citing Govt. SUF ¶¶ 115-127, 130-39, 141-43). The government contends that it has established that the MOD Group committed wire fraud in violation of 18 U.S.C. § 1343.

The Court concludes that viewed in the light most favorable to the Noval Claimants, as required on the government's motion for summary judgment, the facts they allege do raise a genuine dispute as to whether the underlying offense was committed. Primarily, the Noval Claimants cite to evidence and testimony submitted by Al-Sabah

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

during his earlier participation in this case, claiming that Al-Sabah had the authority to
invest and wire the funds at issue.  Noval Opp. at 20-21.  The Noval Claimants rely on
Al-Sabah's declaration filed on March 13, 2023, wherein he asserts that "[p]rior to
December 2010, Former Amir Sabah Al-Ahmad instructed [him] to transfer certain funds
that belonged to the royal family and invest them outside of Kuwait so that the royal
family would have funds available in case of emergency to use for the public interest of
Kuwait," and that "[f]ormer Amir Sabah Al-Ahmad granted [him] complete authority
over these investment funds, including the legal right to possess, transfer, invest, and
recover them."  Dkt. 109-1 ¶ 6.  The Noval Claimants also point to a correspondence
previously submitted by Al-Sabah from Ali Jarrah Al-Sabah, the Minister of Diwan
Affairs, which they claim is submitted on behalf of His Highness Nawaf Al-Ahmad, the
successor to Former Amir Sabah Al-Ahmad, stating "that said expenses were made with
the knowledge and approval of His Highness the late Amir of the State, Sheikh Sabah Al-
Ahmad Al-Jaber Al-Sabah, may Allah rest his soul, for the purpose of serving the public
interest and the national security of the State."  Dkt. 109-3.

     The government objects to this evidence on the basis that when Al-Sabah filed
these documents in opposition to the government's motion to strike in this case, the
Noval Claimants joined the government's position, and therefore, they cannot now
reverse course, unless they agree that Al-Sabah has proper standing, which is in direct
contradiction to their previous filing joining the government's position.  Dkt. 349 at 145-
46.  The Court concludes that for this kind of estoppel argument to apply, the Court
would have had to rule on the motion to strike, adopting the government's position,
which it did not.  New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (holding that for
judicial estoppel to apply, courts ask whether the party was successful in persuading the
court to adopt its earlier position).  Instead, the Court reserved judgment on the issue.
Dkt. 131 at 18.  Accordingly, the Court finds that the Noval Claimants are not judicially
estopped from relying on these filings.

     Kuwait also argues that Al-Sabah's conviction for the alleged underlying offenses
in Kuwait is sufficient to find the specified unlawful activity requirement satisfied here,
on the basis of international comity.  Kuwait Joinder/Opp. at 12.  The evidence to which
Kuwait and the government cite for the fact that Al-Sabah and the other members of the
MOD Group were convicted in Kuwait is Kuwait's response to Franco's interrogatories
in which it states that Al-Sabah "and his co-conspirators were convicted in Kuwait in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

connection with their unlawful seizure of [the] funds." Govt. SUF ¶ 126 (citing dkt. 315 at 1385-86). The Noval Claimants point out in disputing this fact that the MOD Group was first acquitted. Id. For this proposition they rely on the declaration of Professor Hisham Al-Saleh, previously submitted by Al-Sabah in connection with his opposition to the government's motion to strike, who states that he reviewed the filings in the Kuwaiti court and concluded that in March 2022, the court determined that Al-Sabah's "possession of the funds and transfers were completely authorized and lawful under the authority of Former Amir Sabah Al-Ahmad." Dkt. 109-4 ¶ 33. Al-Saleh further stated in his declaration that "[t]here is no procedural mechanism under Kuwaiti law for these findings of fact to be reversed, vacated, or otherwise set aside." Id. ¶ 35. The Court concludes that Kuwait's argument that the Court should recognize the conviction to make out the specified unlawful activity on the basis of the international comity doctrine is undermined by the fact of the MOD Group's original acquittal. Kuwait relies on Mujica v. AirScan Inc. for the factors that courts "often analyze" in determining whether to give effect to a foreign judgment, listing three factors. Kuwait Joinder/Opp. at 11 (citing 771 F.3d 580, 608 (9th Cir. 2014)). Kuwait acknowledges that there are "further sub-factors bearing on this analysis," and the Court notes here that one sub-factor the Ninth Circuit explains is "U.S. public policy interests, … for 'courts will not extend comity to foreign proceedings when doing so would be contrary to the policies … of the United States.'" Mujica, 771 F.3d at 607 (quoting Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir. 1997)). Based on this factor and due to the policies of the United States precluding double jeopardy, the Court concludes that comity would not be appropriate here. See e.g. United States v. Scott, 437 U.S. 82, 91 (quoting Green v. United States, 355 U.S. 184, 187-88) (explaining that the "underlying idea" of the American prohibition against double jeopardy is "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense … enhancing the possibility that even though innocent he may be found guilty") (internal quotations omitted).

At the hearing, the government's counsel argued that Al-Sabah and Al-Saleh's declarations are inadmissible hearsay, if offered. The Court finds that, even if these declarations constitute inadmissible hearsay, the lawfulness of the transfers remains a disputed fact. Viewing the evidence in a light most favorable to the Novals, the accounts from which the funds originated were registered at AUB and NBK, which could lead a reasonable jury to infer that Kuwait knew the funds were transferred and did not take

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
| --- | --- | --- | --- |
| Title | USA v. Real Property Located in Los Angeles, California | | |

action because the transfers were lawful. Accordingly, the Court finds that the alleged constructive knowledge of Kuwait raises a genuine issue of material fact as to the underlying violation of 18 U.S.C. § 1343.

The Court finds that the same factual issues discussed with regard to an underlying violation of 18 U.S.C. § 1343 prevent summary judgment on the proceeds theory based on an underlying violation of 18 U.S.C. § 2314. Showing a violation of this statute requires the government to demonstrate the MOD Group knew that the property at issue was stolen or obtained by fraud and that they transported it or caused it to be transported in interstate or foreign commerce. Pereira v. United States, 347 U.S. 1, 9 (1954); United States v. Williams, 441 F.3d 716, 725 (9th Cir. 2006) ("The statute expressly encompasses the act of causing stolen funds to be transported in foreign commerce."). Because the Noval Claimants raise the factual dispute as to whether the MOD Group had permission to access the funds, described above, the Court finds it cannot conclude at this stage that the funds were stolen or obtained by fraud.

Even if the government's expert could make out tracing of the funds at issue to the defendant assets as proceeds of those funds, therefore, there is a question of fact as to whether the funds were the result of specified unlawful activity pursuant to 18 U.S.C. §§ 1343 and 2314. Accordingly, the Court concludes that summary judgment is not appropriate on this theory of forfeitability.

As to the government's second theory of forfeitability, that the defendant assets are subject to forfeiture because they are involved in money laundering or are traceable to property involved in money laundering pursuant to 18 U.S.C. § 981(a)(1)(A), the Court concludes that summary judgment is not appropriate for the same reasons. The statute provides for forfeiture of property "involved in a transaction or attempted transaction in violation of section 1956 …." 18 U.S.C. § 981(a)(1)(A). Here, the government contends that the funds were involved in a transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i), concealment money laundering, because the assets were involved in and traceable to "transactions designed in whole or in part to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds of" wire fraud pursuant to 18 U.S.C. § 1343 and "misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official" pursuant to 18 U.S.C. § 1956(c)(7)(B)(iv). Govt. Mot. at 3. 18 U.S.C. § 1956(a)(1)(B)(i) "makes it a crime for a person to conduct a financial transaction that involves use of the proceeds of a specified unlawful activity, 'knowing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------|------|------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

that the transaction is designed in whole or in part ... to conceal or disguise the nature, the
location, the source, the ownership, or the control of the proceeds of specified unlawful
activity....'" United States v. Jenkins, 633 F.3d 788, 804 (9th Cir. 2011). Because both
theories of specified unlawful activity here would require a showing that the MOD Group
was not entitled to the funds at issue, which the Court has concluded is a disputed fact,
the Court finds that summary judgment is also inappropriate on this theory of forfeiture.

At oral argument, counsel for Kuwait requested that discovery be re-opened to
grant Kuwait the opportunity to depose Al-Saleh, as the Noval Claimants relied upon Al-
Saleh's declaration in their motion for summary judgment. The Court declines to rule on
this request until the appropriate motion is brought.

> b)   Innocent Owner Defense

The Court also concludes that there is a genuine dispute of material fact as to the
Noval Claimants' innocent owner defense. A claimant asserting the affirmative defense
that he or she is an innocent owner under § 983(d)(1) bears the burden of proving the
defense by a preponderance of the evidence. United States v. Ferro, 681 F.3d 1105, 1109
(9th Cir. 2012). Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in
property shall not be forfeited under any civil forfeiture statute." The statute further
provides that, when a property interest is acquired after the conduct giving rise to the
forfeiture takes place, "innocent owner" means:

> A person, who, at the time that person acquired the interest in the property–
>
> > (i) was a bona fide purchaser or seller for value (including a purchaser or
> > seller of goods or services for value); and
> >
> > (ii) did not know and was reasonably without cause to believe that the
> > property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A). The Court finds that there is a genuine dispute of
material fact regarding whether the Noval Claimants were BFPs and whether the Noval
Claimants knew and were reasonably without cause to believe that the property was
subject to forfeiture.

The Court concludes that taking the evidence in the light most favorable to the
Noval Claimants, as the Court must in considering the government's motion for summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|--------------------|
| Title    | USA v. Real Property Located in Los Angeles, California | | |

judgment on their innocent owner defense, a reasonable jury could find that the Noval
Claimants were BFPs for value of the Kuwaiti funds. A BFP is one who gives value, in
good faith, without notice of superior interest in the property at issue. <u>United States v.
$3,124,977.28 in U.S. Currency</u>, 239 F. App'x 335, 337 (9th Cir. 2007) (defining BFP
according to California law and noting that the federal common law definition is
substantially the same).

      For its part, the government proffers evidence that the purported consideration
given by the Noval Claimants to Al-Sabah did not exist, was not valid, or is contradicted
by deposition testimony. Noval SUF ¶ 53; Govt. SUF ¶ 210; Noval ¶ 58. However, the
Noval Claimants contend that Al-Sabah was given equivalent value by them in exchange
for the funds they received because he was given 50% membership of LA Stars, which
was a 40% member of TPP, the owner of the Mountain until the time its ownership was
foreclosed by the Hughes Trust. Noval Opp. at 15. According to the Franco, Victorino,
and Dickens declarations, the Noval Claimants contend that whether Al-Sabah was an
equity owner through LA Stars, or he was protected by the Awal Promissory Note and
according profit participation and membership in BHREH, he would have expected the
same return on his investment. Noval SUF ¶ 78. The Noval Claimants assert that the
Awal Promissory Note does not provide for the payment of interest on the loan because
Al-Sabah informed Franco that as a Muslim, he was not permitted to charge interest
pursuant to religious law. Noval SUF ¶ 80. Through the Awal Promissory Note, Al-
Sabah was granted a promise to pay $69,962,881, plus 50% of the profits from the sale of
the Mountain, "after repayment of the $69,962,881 and the secured Hughes Trust debt."
Noval Opp. at 15. Per the Noval Claimants, the Awal Promissory Note "stated the
amount for the funds wired by [Al-Sabah] up to the date of the promissory note," but
"[a]dditional value was provided to [Al-Sabah] for additional amounts he invested and
loaned." Govt. SUF (dkt. 347-1) ¶ 188. At bottom, the Noval Claimants dispute that the
Awal Promissory Note was the only value or consideration provided to Al-Sabah. Govt.
SUF ¶ 189. Rather, they contend that "[Al-Sabah] received approximately $145,000,000
to $215,000,000 of value in equity in the Mountain on the owner side and profit
participation and equity on the lender side." Noval Opp. at 15. As to the government's
argument that the arrangement with LA Stars was between Victorino and Al-Sabah, and
therefore could not represent consideration provided by the Noval Claimants to Al-Sabah,
Victorino contends in his declaration that he "never acted on the Noval Claimants' behalf
except [he] provided a liaison between [Al-Sabah] and [his] son Franco …." Victorino

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|------------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

Decl. ¶ 32. The Court accordingly concludes that a reasonable jury could find that the Noval Claimants provided value in good faith and that they are properly considered BFPs.

Viewing the evidence in the light most favorable to the Noval Claimants, the Court finds that a reasonable jury could determine that the Noval Claimants did not know or have reasonable cause to believe that the defendant assets were subject to forfeiture. Per Franco's declaration, he believed that wire transfers from Al-Sabah came from his personal or family wealth. Noval SUF ¶ 61. Because he also knew that Al-Sabah was a member of the Kuwaiti Royal Family, his knowledge that the funds came from an account in the name of "Embassy of Kuwait" was consistent with his belief that the funds belonged to Al-Sabah as an individual. Id. Neither Franco nor any of the Noval Claimants received information that the wire transfers were for the purpose of building a Kuwaiti military academy. Id. ¶ 64. The government, on the other hand, contends that Franco "had ample reason to know that [Al-Sabah's] funds were illicit," citing to various pieces of evidence that could suggest to a juror that Franco was informed of the suspicious activity. Govt. Reply at 21. However, because a reasonable jury could decide to credit Franco's account, the Court denies the government's motion for summary judgment on the innocent owner defense. Cf. United States v. $131,551.03 Plus Accrued Int. from Sale of 10 Table Bluff Rd., Loleta, CA, No. C06-05256 SI, 2010 WL 1135743, at *4 (N.D. Cal. Mar. 22, 2010) (granting summary judgment on the innocent owner defense because the claimant "undisputedly knew of the conduct giving rise to forfeiture").

**B.    The Noval Claimants Motion for Summary Judgment**

1.    Forfeitability

a)    The Noval Claimant's Motion on Forfeitability

Many of the arguments made by the Noval Claimants in their motion for summary judgment are identical to those summarized above from their opposition, thus the Court here summarizes the additional arguments very briefly.

The Noval Claimants argue that the specified unlawful activity upon which forfeiture is based are violations by Franco of 18 U.S.C. §§ 1014, 1343, and 1344, alleging he made a false application to a financial institution, committed wire fraud, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|------------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

committed bank fraud, respectively. Noval Mot. at 14. They argue that Franco was not required in the Morgan Stanley application to provide information regarding unsecured debt of the LLCs in which Rexford Trust is a member, as that is not Rexford Trust's debt, and that both the Morgan Stanley account representative and FBI Agent MacDonald, the agent assigned to this case, verified that Franco was not required to make these disclosures. Id. at 14-15. Accordingly, the Noval Claimants allege, Franco did not violate the statutes at issue because he "always believed and continues to believe the $30,000,000 cash was all that was needed for Morgan Stanley to approve the application" and he was never asked about the source of the funds. Id. at 15. They argue that Franco also did not intend or contemplate harm to Morgan Stanley and believed the information he provided was accurate and truthful. Id. at 16.

### b)   The Government's Opposition to Forfeitability

In opposition, as to forfeitability the government first argues that the Noval Claimants already conceded traceability and that the government can prove traceability. Govt. Opp. at 3. The government next states the same argument made in its reply that it does not need to prove that any of the Noval Claimants committed any crime in order to demonstrate that the defendant assets are subject to forfeiture and that the government does not need to prove that the property claimant was responsible for committing the underlying specified unlawful activity. Id. at 7.

The government next argues that there is a material dispute as to whether Franco violated 18 U.S.C. §§ 1014, 1343, and 1344, which each require that an individual make a false statement. Id. at 8. The government contends that "[t]he Noval Claimants cannot prevail because Franco made several false statements to financial institutions in an effort to disguise the fact that the funds came from [Al-Sabah]." Id.

### c)   The Noval Claimants' Reply

The Noval Claimants restate their arguments that there was no ambiguity as to the deadlines for expert disclosures, thus the expert testimony herein relied upon must be excluded and that the government cannot meet its traceability burden without an expert. Noval Reply at 1-7. The Noval Claimants argue that they have never conceded the issue of tracing as the government contends. Id. at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

The Noval Claimants next argue that the government has not met its burden on either claim based on the Noval Claimants' alleged violations of 18 U.S.C. §§ 1014, 1343, or 1344. Id. at 10. The Noval Claimants argue that the government misunderstands its argument, which is not that it must prove the Noval Claimants committed a crime, but that the government must prove the elements of the underlying offenses by a more likely than not standard of proof in order to base forfeiture thereon. Id. at 10 n.2.

The Noval Claimants contend that they are only required to show that the government cannot establish at least one of the necessary elements of its claims, and here there are at least two elements of these statutes which the government cannot establish. Id. at 10. They argue that the government avoids the undisputed fact that the Rexford Trust was the only applicant for the Morgan Stanley line of credit and that whether or not Morgan Stanley would have opened a line of credit for an international client is irrelevant. Id. at 11. The Noval Claimants contend that neither Franco nor Victorino hid Al-Sabah as the source of the funds, rather they were open about the source of the funds. Id. at 11-12. Lastly, they argue that the government cannot establish the intent element of the specified unlawful activity at issue because Franco did not intend or contemplate harm to Morgan Stanley. Id. at 12-13.

      2.    The Innocent Owner Defense

        a)    The Noval Claimants' Motion

The Noval Claimants set forth the same arguments summarized from their opposition above as to why the innocent owner defense applies. Noval Mot. at 16-21.

        b)    The Government's Opposition to the Innocent Owner Defense

The government largely states the same arguments presented in its motion and reply to its motion in opposition to the Noval Claimants' MSJ on the innocent owner defense. See generally Govt. Opp. The government also argues that the Awal Promissory Note was determined by this Court to be a sham created to conceal property traceable to criminal conduct. Id. at 15 (citing United States v. Mi Suk Yi, 2:03-CR-406-CAS, Hon. Christina A. Snyder's Findings of Fact and Conclusions of Law, dkt. 329 at 18). The government further contends that Victorino has, since 2007, attempted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

frustrate the government's forfeiture efforts, citing to Victorino's similar efforts in his prior case before this Court. Id. at 16.

> ### c) Kuwait's Opposition to the Innocent Owner Defense

Kuwait recites facts that it contends require summary judgment on the Noval Claimants' innocent owner defense because they show that the Noval Claimants were not BFPs and they did not know nor were without reasonable cause to believe that the funds were subject to forfeiture. Kuwait Joinder/Opp. at 14-16. Kuwait presents similar arguments to the government as to why the Awal Promissory Note is not properly considered an arm's length transaction and why other consideration Al-Sabah received was illusory, meaning that the Noval Claimants were not BFPs. Id. 17-18. Kuwait also argues that the Noval Claimants' arguments as to why they did not question the legality of the origins of the funds do not withstand scrutiny. Id. at 21. Kuwait argues that there is no evidence the Noval Claimants had Al-Sabah vetted, and in fact one relevant professional said he did not and that he told the Noval Claimants to stop sending funds to his firm and Franco admitted he did not know whether the other had investigated the funds. Id. at 22.

> ### d) The Noval Claimants' Reply

The Noval Claimants contend that the government's opposition did not create a triable issue of material fact as to its innocent owner defense for the same reasons it argues the government cannot meet its burden on the alleged violations of 18 U.S.C. §§ 1014, 1343, and 1344 violations by the Noval Claimants. Noval Reply at 13. The Noval Claimants argue that the government cannot now change the scope of its case and include one of the first five wires from Al-Sabah, in the amount of $8.5 million, when "[t]he [CMC] does not seek forfeiture of any funds wired to the United States prior to January 2012, nor of any property traceable to said funds or the proceeds of such funds." Id. at 13, n.4. Additionally, they argue, this does not change the fact of the Noval Claimants' lack of knowledge. Id. at 13-14. They reiterate their argument that the source of the funds "appeared logical and reasonable considering [Al-Sabah] is a member of the royal family in an Arab emirate country where the lines between government and sovereign/royal family are extremely blurred, if they exist at all." Id. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

The Noval Claimants next argue that the government misconstrued and mischaracterizes the value that they provided to Al-Sabah as BFPs. Id. at 15. They contend that Franco did not testify that the Awal Promissory Note was the only value given to Al-Sabah, rather he testified that it reflected the amount loaned by Al-Sabah to the Noval Claimants through the date of the note. Id. at 15. They also argue generally that references to Victorino's prior court cases are irrelevant and are an improper attempt to create bias. Id. at 16, n.7. The Noval Claimants also argue that the government is incorrect about the flaws it alleges with the Awal Promissory Note. Id. at 17-18. They argue that the statute of frauds argument does not make sense because even if applicable, there is a writing. Id. at 18.

Finally, the Noval Claimants incorporate by reference their objections to Kuwait's filings, dkt. 341, and their reply to Kuwait's response, dkt. 343.

### 3. Conclusion on the Noval Claimants' Motion

#### a) Forfeitability Claims

First, as to the expert issue, the Court has already found that automatic exclusion of the government's tracing evidence provided by its expert witness is not applicable here. See Section A3. Accordingly, the Court finds that the Noval Claimants' motion does not succeed on this ground.

Second, as to the elements of the government's claims for forfeitability, the Court finds that there are genuine disputes of material fact regarding the elements of wire fraud pursuant to 18 U.S.C. § 1343, foreign transport of stolen money pursuant to § 2314, and false application to financial institution pursuant to § 1014.

In order to make out a violation of 18 U.S.C. § 1343, the government must make out a "(1) a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) a specific intent to deceive or defraud." United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001) (citing United States v. Blinder, 10 F.3d 1468, 1472 (9th Cir. 1993)). Viewing the evidence in a light most favorable to the government, the Court finds that a genuine dispute exists as to the establishment of a scheme to defraud and a specific intent to deceive or defraud. Viewing the evidence in the light most favorable to the government, the MOD Group established a scheme to defraud the State of Kuwait, proven by facts including the skirting of compliance measures by the MOD Group, justified to the AUB

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

Bankers with fabricated national security and intelligence reasons, and by the MOD Group's claims that the transfers were for a purported military academy. Govt. SUF ¶¶ 125, 130. Relying on the MOD Group's misrepresentations, the government argues, the AUB Bankers caused the twelve fraudulent transfers. Govt. Mot. at 12 (citing Govt. SUF ¶¶ 115-127, 130-39, 141-43). The Court finds that, on this record, a reasonable jury could determine that the MOD Group created a scheme to defraud and acted with specific intent to defraud, precluding the grant of summary judgment for the Noval Claimants. See Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 981 (9th Cir. 1980) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible.").

In order to make out a violation of 18 U.S.C. § 2314, the government must prove that the MOD Group knew the property at issue was stolen or obtained by fraud and that they transported it in interstate or foreign commerce. Pereira v. United States, 347 U.S. 1, 9 (1954); United States v. Williams, 441 F.3d 716, 725 (9th Cir. 2006) ("The statute expressly encompasses the act of causing stolen funds to be transported in foreign commerce."). Viewing the evidence in the light most favorable to the government, a reasonable juror could find that the MOD Group knew the funds were stolen or fraudulently obtained, and that the MOD Group transported them in foreign commerce from the United Kingdom to the United States.[5] A jury could rely on evidence that the MOD Group orchestrated a scheme in which funds were purposely segregated into unregistered accounts that were not subject to regular compliance measures, falsely designated for a military academy. Govt. SUF ¶¶ 125, 130. If a jury credits the government's account of the MOD Group's intentional scheme, it would reasonably conclude that the MOD Group knew the funds were obtained by fraud. See Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 981 (9th Cir. 1980) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible.").

A violation of 18 U.S.C. § 1014 occurs when someone "knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance

---

[5] The Noval Claimants do not dispute that the MOD Group caused the transport of the funds in foreign commerce. Govt. SUF ¶ 115.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | Lead Case No.<br>2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|------------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

Corporation ... upon any ... commitment ... or application for ... a guarantee." United States v. Taylor, 808 F.3d 1202, 1204 (9th Cir. 2015) (citing 18 U.S.C. § 1014). Viewing the evidence in the light most favorable to the government, the Court finds that genuine disputes of material fact exist regarding this claim, especially given the "knowledge" requirement. See Consol. Elec. Co. v. U.S. for Use & Benefit of Gough Indus., Inc., 355 F.2d 437, 438 (9th Cir. 1966) ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment."). Crediting the facts proffered by the government, a reasonable juror could find that Franco knowingly made a false statement to Comerica Bank, a federally insured financial institution, to influence it to not terminate the Noval Claimants' accounts. Specifically, a reasonable juror could find that the statements referenced in Comerica Bank's internal investigation forms— that, when questioned, Franco "responded on two different occasions with conflicting information, giving the appearance that he was attempting to legitimize the suspicious wire transaction"—met this definition. See Govt. SUF ¶ 237. Alternatively, a reasonable juror could find that Franco's statements to Morgan Stanley, another federally insured institution, were knowingly false, in an effort to influence Morgan Stanley to accept Rexford Trust's funds and approve its credit line application. See id. ¶¶ 268-283.

#### b)   Innocent Owner Defense

Third, as to the Noval Claimants' innocent owner defense, the Court finds that genuine disputes of material fact preclude the granting of summary judgment. A claimant asserting the affirmative defense that he or she is an innocent owner under § 983(d)(1) bears the burden of proving the defense by a preponderance of the evidence. United States v. Ferro, 681 F.3d 1105, 1109 (9th Cir. 2012). Under 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." The statute further provides that, when a property interest is acquired after the conduct giving rise to the forfeiture takes place, "innocent owner" means:

A person, who, at the time that person acquired the interest in the property–

(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|---|---|---|---|
| Title | USA v. Real Property Located in Los Angeles, California | | |

(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A). Viewing the evidence in the light most favorable to the government, the Court finds that there are genuine disputes of material fact regarding whether the Noval Claimants were BFPs and whether they knew, or had reason to know, that the defendant assets were subject to forfeiture.

The government raises factual issues as to whether the Noval Claimants were BFPs. Specifically, the government proffers evidence that the Memorandum of Agreement with LA Stars could not have been consideration, because the Noval Claimants have not shown that they (as opposed to Victorino) were members of LA Stars. Noval SUF ¶ 53. The government also proffers evidence that Al-Sabah's 50% ownership interest in BHREH could not constitute consideration, because Franco testified in his deposition that the Awal Trust did not hold a 50% interest in BHREH. Govt. SUF ¶ 210. Similarly, the government proffers evidence that the alleged Option Agreement, in which Al-Sabah would receive 50% of the profits from the sale of the Mountain should BHREH exercise its Option Agreement to purchase the Mountain, could not constitute valid consideration, because it is contrary to the language of the Awal Promissory Note and the Noval Claimants lack evidence that Al-Sabah was informed of it. Noval SUF ¶ 78. Additionally, the governments points to evidence in Franco's testimony that the Awal Promissory Note was the complete memorialization of the loan agreements, and in its expert report, that such an agreement could not have constituted an arms-length transaction. Examining this evidence, a reasonable juror could find that no consideration was received for the twelve transfers of Kuwaiti funds and that, thus, the Noval Claimants were not BFPs. The material factual dispute defeats the Noval Claimants' motion for summary judgment on the innocent owner defense. See Startech, Inc. v. VSA Arts, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000) ("Ordinarily, the question of consideration is one of fact.").

Additionally, the government offers evidence that Franco "had ample reason to know that [Al-Sabah's] funds were illicit," citing to facts including: that Franco knew the funds came from the Embassy of Kuwait; that a man who worked for Franco to help set up QuickBooks, Robert Loitman, told him that "to stay on the good side of the IRS," Franco would need a valid loan agreement with Al-Sabah; that Franco's business manager, Segal, told him, in June 2015, that Comerica Bank sought to terminate its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | Lead Case No. 2:20-cv-06314-CAS (KSx) | Date | December 16, 2024 |
|----------|----------------------------------------|------|-------------------|
| Title | USA v. Real Property Located in Los Angeles, California | | |

banking relationship with Franco because of a "questionable source and application of the
funds surrounding the Kuwaiti government"; and that Franco then turned to Morgan
Stanley and failed to disclose that his funds came from Al-Sabah.  Govt. SUF ¶¶ 227,
185, 238-241, 289.  Additionally, the government relies on Victorino's later statements to
Al-Sabah, and deposition testimony suggesting that Victorino had implicit authority to
communicate with Al-Sabah on behalf of the Noval Claimants.  These statements include
a text from Victorino stating: "[o]ver the years I couldn't disclose the source of funding
and you didn't want to be known.  I couldn't disclose the wires for reasons.  We were
kicked out of comerica when the 57M came from someone."  Id. ¶ 246.  A reasonable
jury could decide to credit the government's account that the Noval Claimants, at
minimum, had reasonable cause to believe that the funds were obtained unlawfully.
Thus, even if the Noval Claimants could establish that they were BFPs as a matter of law,
the factual dispute regarding their actual and reasonable knowledge defeats their motion
for summary judgment.  See United States v. One Residential Prop. Located at 8110 E.
Mohave Rd., Paradise Valley, AZ, 229 F. Supp. 2d 1046, 1049 (S.D. Cal. 2002)
(plaintiff's averment that claimant was connected to alleged fraud by the previous owners
of the property raised a factual dispute as to claimant's knowledge that the property may
have been purchased with proceeds of a fraudulent activity, precluding summary
judgment on the innocent owner defense).

**V.      CONCLUSION**

       In accordance with the foregoing, the Court **DENIES** plaintiff's motion for
summary judgment, or in the alternative, partial summary judgment.  The Court **DENIES**
the Noval Claimants' motion for summary judgment, or in the alternative, partial
summary judgment.  The Court orders that the Noval Claimants identify and disclose
their rebuttal expert on tracing no later than January 31, 2025.

01:04
Initials of Preparer:   CMJ